### LANCASTER et al. v. MARSHALL et al.[*]
### (No. 2856.)

(Court of Civil Appeals of Texas. Texarkana.
March 7, 1924. Rehearing Denied
March 20, 1924.)

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by Mrs. Sue Marshall and another against J. L. Lancaster and others, Receivers of the Texas & Pacific Railway. Judgment for plaintiffs, and defendants appeal. Affirmed.

See, also, 247 S. W. 926; 260 S. W. 252; 260 S. W. 256.

*Writ of error refused May 21, 1924.

ous passage by the same train and route that the corpse was to be forwarded. The corpse was removed from the train by appellant's agents at Fort Worth, causing deviation from the original route and depriving appellee of continuous passage with the corpse and delaying the arrival of the corpse at De Kalb. Besides a demurrer and special exceptions to the petition, the appellants filed a general denial and a plea of limitation of two years in bar of the suit. The jury returned a verdict in favor of appellee for damages in the sum of $1,250.

The evidence shows that appellee's mother had gone to El Paso for the benefit of her health, and later died there on April 25, 1921. Her home was in De Kalb, Tex., where she and her family had lived for a number of years. At the time of her death, which was not unexpected, there were present her husband, son, and three daughters, the appellee being one of the daughters. The appellee at the time was unmarried and lived with her father and mother. The family present all decided and agreed to bury the deceased at De Kalb, Tex., on April 27, 1921, at 10 o'clock a. m. and to have the funeral arrangements made accordingly. They agreed among themselves to transport the corpse direct to De Kalb, and for each one of them to go with it, over the Texas & Pacific Railway in a continuous passage, by way of Texarkana, on the Sunshine Special train. The line of the Texas & Pacific Railway runs from El Paso to Texarkana, with a branch line from Fort Worth via Whitesboro and De Kalb to Texarkana. At the time in question there was operated over the Texas & Pacific Railway from El Paso to Texarkana a fast through passenger train, known as the Sunshine Special, leaving El Paso at 4:15 o'clock p. m. and arriving at Texarkana the next day at 10:45 p. m. A passenger train also regularly left Texarkana for Fort Worth over the branch line daily at 8 o'clock a. m. arriving at De Kalb, 34 miles distant, at 9:45 a. m. A passenger train also regularly left Fort Worth for Texarkana over the branch line daily at 7:25 a. m., arriving at De Kalb at 4:50 p. m. The schedule time from El Paso to De Kalb via Texarkana, on the Sunshine Special out of El Paso, is seven hours earlier than the schedule time of the passenger train via Fort Worth and Whitesboro. The schedule time of the trains were known to the family of the deceased at the time they agreed upon the time of the burial and upon the route of travel to De Kalb. The brother of appellee testified:

"At the time of my mother's death my father, three sisters and myself were present. In making arrangements for the burial of my mother we just talked it over and decided for me to go down and get the tickets after we had definitely decided where we would bury her and at what time. We decided to bury her at home on April 27 at 10 o'clock. I was to go buy the tickets, also see an undertaker, and do the wiring. I wired Mrs. Crew at De Kalb from El Paso to make arrangements at that end of the line. I told her we would be in Texarkana on the Sunshine Special, and I think I said 'to-morrow night.' That was April 25. I think I said we would be in Texarkana to-morrow night at 11 o'clock. I bought a ticket for my father, one for the corpse, and one for each of my sisters. The following receipt was given by the railway ticket agent:

"'El Paso, Texas, April 25, 1921.

"'Texas & Pacific Railway Co.

"'Received amounts as stated El Paso, Texas, to De Kalb, Texas, via Texarkana.

| No. Tickets. | Amounts Received. |
| --- | --- |
| No. 15584 | $34 88 |
| No. 15585 | 34 88 |
| No. 15586 | 34 88 |
| No. 15587 | 34 88 |
| No. 15589 | 34 88 |

"'[Signed]    R. F. Blackburn,
"'Agent, T. & P. Ry. Co.'

"Among those five tickets was the corpse ticket for the passage of my deceased mother from El Paso to De Kalb.

"The corpse ticket reads [reading from it]:

"'The Texas & Pacific Ry., J. L. Lancaster and Charles L. Wallace, Receivers. El Paso [city] Texas, to De Kalb, Texas, via Texarkana. Good for one continuous passage commencing not later than one day after date of sale. Subject to tariff regulations.

Form
"'15584   Local 1
861
"'Geo. D. Hunter, General Passenger Agent.
"'Check to be taken up by first conductor.
"'El Paso (city) Tex., to De Kalb, Texas. 15584. Not good for passage. Form Local 1 Texas and Pacific Railway.'

"It is indorsed 'corpse ticket' across the front and on the back, and on the back is dated 'April 25, 1921.'

"Before purchasing these tickets I discussed with the agent as to what train we wanted to go on, and gave him the reasons why. The Sunshine Special route was selected on account of its getting in nearly a day earlier. The agent routed me that way. * * * I purchased the tickets at the city ticket office, the uptown office, in El Paso. I did not know the agent, and I don't think he knew me. I can't remember the exact language used by him and myself. I told him my mother was dead and that I wanted a corpse ticket and four other tickets, for my father, sisters, and myself, and that I wanted to go by way of Texarkana as it would put me at home earlier than the other way. I explained why I wanted to go that way. I do not remember telling him what hour the funeral was set for, and I don't remember telling him what day we expected to bury my mother. I used some of my money and some of my father's money, and my sister drew some and gave me the money to buy the tickets. * * * My father did not go with me to the ticket office, and neither did any of my sisters. * * * At the time I purchased the tickets I told the agent why I wanted to be directed by Texarkana. He suggested another route via Fort Worth, and I told him why I wanted to go by way of Texarkana. I told him we wanted to

go by Texarkana because it would put us in home nearly a day earlier. He routed us via Texarkana. * * * After obtaining the tickets my sisters, my father, and myself boarded the Sunshine Special at 4:15 p. m., April 25, and there was placed aboard that same train the corpse of my mother. I saw the corpse at the station and know it to be a fact that it was placed aboard that same train."

The plaintiff testified:

"I was present at the time of my mother's death, and I recall what arrangements were made in reference to the funeral. We were to reach home on April 27, and the burial was to be at 10 o'clock. My brother was to purchase the tickets for us. We were to leave El Paso for De Kalb April 25th, 1921, at 4:15, p. m., on the Sunshine Special going to Texarkana. We got into Texarkana about 2 o'clock a. m., April 27. My mother's remains did not come in on that same train, we did. I learned for the first time at Mt. Pleasant that her corpse was not on this train. My brother told me. We got to De Kalb at 9:45 a. m. on April 27, but the corpse did not get there until 5 p. m. of that day. It was just at dusk when the funeral of my mother was over. * * * I did not purchase my own ticket home, but my brother purchased it for me. I contributed nothing in the way of money towards purchasing the corpse ticket. My brother went to the ticket office and purchased a ticket for the corpse and myself, and, of course, when I went to get on the train he gave me my ticket."

It is shown that the corpse reached De Kalb at 5 o'clock p. m. April 27, coming over the branch line from Fort Worth via Whitesboro. As a consequence the funeral did not occur until about 5:50 p. m. of April 27. It appears that the dead body was taken from the Sunshine Special train at Fort Worth. The following explanations appear: The station master at Fort Worth testified:.

"I remember the circumstances of Mrs. Mebane's corpse being taken off the train at Fort Worth. The baggage check attached to the corpse casket when it arrived in Fort Worth did not in any way indicate that it was routed via Texarkana. As the transcontinental division is the usual and customary route and the shortest route, the corpse was taken off and held for the train on division No. 32 leaving at 7:25 next morning. It was placed aboard that train."

The general baggage agent testified:

"The checking of baggage in El Paso is done by a terminal company, which is separate from the T. & P. The proper route for baggage, where there is no special direction, from El Paso to De Kalb, would be via Fort Worth. If it is checked via Texarkana, it would go by there, but if not so specially routed it would be taken off at Fort Worth and sent on transcontinental division, which is a nearer route. * * * Before issuing a baggage check there must be a ticket presented, and the baggage is checked by the route on the ticket. From the ticket is made out the baggage check. Whoever makes it out should make it as called for in the ticket."

It was proven that plaintiff's brother, after he purchased the tickets, handed the "corpse ticket" to the undertaker at El Paso for him to "check" the corpse according to the railway regulations, and there was issued and delivered to the undertaker a "check," which he delivered to the brother of plaintiff together with the corpse ticket. The evidence is conflicting respecting the recitals of the check. The appellants' evidence goes strongly to show that the check recites "From El Paso U. D. via T. & P. R. R. to De Kalb." The appellee testifies that the check issued and delivered recites, "El Paso to De Kalb, Texas, via Texarkana."

King, Mahaffey & Wheeler, of Texarkana, for appellants.

Sid Crumpton, of Texarkana, and O. B. Pirkey, of New Boston, for appellees.

LEVY, J. (after stating the facts as above). The questions presented on appeal in this case are the same as in the companion case of Lancaster et al., Receivers, v. Florence Mebane (Tex. Civ. App.) 260 S. W. 256, and the assignments of error are therefore overruled for the reasons stated in the case supra.

The judgment is affirmed.